UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-23127-CIV-KING

JOHN DALTON,

       Plaintiff,

v.

STATE OF FLORIDA, DEPARTMENT
OF HIGHWAY SAFETY AND MOTOR
VEHICLES,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment (DE #27), filed September 17, 2012. Therein, Defendant State of Florida, Department of Highway Safety and Motor Vehicles seeks summary judgment on all counts. The Court is fully briefed in the matter.[1] Upon careful consideration of the record and the pleadings, the Court finds that Defendant's Motion should be granted.

### I. BACKGROUND

Plaintiff John Dalton ("Dalton"), a former employee for Defendant State of Florida, Department of Highway Safety and Motor Vehicles ("DHSMV"), filed the above-styled action on August 30, 2011, alleging that Defendant discriminated against

---

[1] Plaintiff filed a Response (DE #43) on October 8, 2012. Defendant replied (DE #52) on October 17, 2012.

him on the basis of his gender and then retaliated against him for complaining about disparate treatment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, *et seq.*, and the Florida Civil Rights Act, Fla. Stat. § 760.10, *et seq.* (DE #1). The following facts are uncontested. *See* (Def. DHSMV's Motion for Summary Judgment, DE #27, pp. 1-13; Pl.'s Statement of Facts in Support of Response to Motion for Summary Judgment, DE #44).

Plaintiff is a retired City of Miami police officer. (Dalton Dep., DE #27-1, p. 11). In 1998, he joined the State of Florida as a driver's license examiner and then became an investigator. He was later transferred to the Florida Highway Patrol's Office of Professional Compliance and was appointed to run the Miami office as an Investigator Supervisor. (Dalton Dep., DE #27-1, pp. 9-11). Effective February 1, 2010, Plaintiff's division was transferred to DHSMV Office of the Inspector General. There Plaintiff served as an Investigation Specialist II, under the supervision of Deputy Inspector General Taroub King and Inspector General Julie Leftheris. (Leftheris Aff., DE #27-1, 53; DE #1).

On Thursday, October 27, 2010, Plaintiff was investigating a driver's license employee named Aaron Lee. Plaintiff disclosed to Lee that he would be going to Key Largo the following day to conduct an interview related to a trainer who allegedly had shared pornographic videos on her cell phone. (Dalton Dep., DE #45-1, p. 11; DE #27-2, p. 1). Lee was friends with the trainer, Jenny Sims, and passed the information along to her. Sims notified her supervisor, and within short order, the disclosure had been relayed to Deputy Inspector General King, who notified Plaintiff's direct supervisor, Captain

Jeffrey Dixon, of the incident and instructed him to cancel the Sims interview. (DE #27-2, p. 1).

The Confidentiality Agreement for the Inspector General's office states, in pertinent part, that employees agree:

> · to protect and honor the sensitive and confidential nature of this information; and
> · to disclose this information only in appropriate situations to authorized persons (authorized persons will be identified and authorized by the Deputy Inspector General.)
>
> I understand that improper disclosure may result in disciplinary action up to and including dismissal.

(DE #27-2, pp. 67). Plaintiff signed this version of the Confidentiality Agreement on August 26, 2010. *See id.* He had earlier signed substantially similar version on August 1, 2002. *See* (DE #27-2, pp. 66).

Early on October 28, 2010, Captain Dixon called Plaintiff and told him the interview with Sims had been cancelled. (Dalton Dep., DE #45-1, pp. 12-13). He did not explain why. After contacting Sims' supervisor to see why the interview had been cancelled, Plaintiff called Captain Dixon back. (*Id.*) Plaintiff did not deny having made the statement to Lee, but Plaintiff was unequivocal that he had not mentioned Sims by name and accordingly did not think that he had done anything wrong. (Dalton Dep., DE #45-1, pp. 14-15). Captain Dixon, however, stated that it was inappropriate "to discuss those cases with anybody outside the unit." (Dalton Dep., DE #45-1, p. 14); *see also* (Dixon Dep., DE #46-1, p. 19; DE #27-2, p. 2).

Realizing that Plaintiff was upset by the suggestion that he had violated department policy, Captain Dixon called him back. It was during this call that Plaintiff expressed that he felt like he was being treated unfairly and, in particular, receiving less favorably than female employees. (Dalton Dep., DE #45-1, pp. 16-17). Plaintiff referred specifically to another employee, Christine Gracey, who in 2009 filed a hostile work environment claim against Plaintiff. (*Id.*; DE #27-1, pp. 39-44). Gracey's allegations all were determined to be either "Unfounded" or "Not sustained" and resulted in no action against Plaintiff (DE #27-1, pp. 39-44). However, Plaintiff alleged that Gracey had fabricated the claims and that she should have been disciplined accordingly. Plaintiff took the fact that Gracey was not disciplined for her "false and unfounded allegations," (DE #1, ¶ 14), as evidence of a female employee being treated more favorably. Additionally, he believed that Deputy Inspector General King should have been disciplined for permitting a Gubernatorial Fellow to sit in on a case meeting. (Dalton Dep., DE #45-1, pp. 16-17; Leftheris Aff., DE #27-1, p. 53). In light of what he felt was disparate treatment, Plaintiff told Captain Dixon that he intended to file his own hostile work environment complaint and a complaint with the Equal Employment Opportunity Commission ("EEOC"). Captain Dixon shared this information with Deputy Inspector General King. (Dixon Dep. DE #27-2, p. 50). However, no complaint was received by the personnel department. (Cooper Dep., DE #27-2, p. 24).

On either Monday, November 1, 2010 or Tuesday, November 2, the Disciplinary Action Review Board met. Its members included the chief of personnel, the general counsel, Inspector General Leftheris, Deputy Inspector General King, and Captain Dixon.

(King Dep., DE #27-1, pp. 61-62; Leftheris Dep. DE #48-1, pp. 10-11; DE #44, p. 7). At the meeting, Inspector General Leftheris decided to terminate Plaintiff's employment. (Leftheris Dep., DE #48-1, p. 12). One or two days later, on November 3, Plaintiff received a two-sentence letter informing him that he had been fired, effective immediately; it did not explain why. (DE #27-2, p. 7).

In the 14 months that the above-styled action has been pending, Defendant has consistently stated that Plaintiff's employment was terminated because he breached the Confidentiality Agreement. Defendant filed its Motion for Summary Judgment at the close of discovery. The Court now turns to whether Defendant is entitled to judgment as a matter of law.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also*

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)

(holding that the nonmoving party must "come forward with significant, probative

evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the

basic facts, but disagree about the factual inferences that should be drawn from these

facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296

(11th Cir. 1983). On a motion for summary judgment, the court must view the evidence

and resolve all inferences in the light most favorable to the nonmoving party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of

evidence in support of the nonmoving party's position is insufficient to defeat a motion

for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is

merely colorable or is not significantly probative, summary judgment is proper. *See id.* at

249–50.

## III. DISCUSSION

Plaintiff brings his claims under Title VII and the Florida Civil Rights Act. Both

laws prohibit employers from discriminating on the basis of race and protect from

retaliation employees who complain about unlawful employment activities. Defendant's

Motion seeks summary judgment on all four counts of Plaintiff's Complaint. However,

since Defendant filed its Motion, the parties stipulated to dismiss with prejudice the

gender discrimination claims,[2] leaving before this Court only Plaintiff's claims of retaliation in violation of Title VII (Count I) and the Florida Civil Rights Act (Count III). On these counts, Defendant argues that it is entitled to judgment as a matter of law because Plaintiff has failed to establish a prima facie retaliation claim and, in the alternative, that the case should be dismissed because Plaintiff willfully withheld relevant information during discovery about his medical and mental health treatment. Upon careful consideration of the record and the pleadings, the Court finds that Defendant's Motion should be granted.

## A. *Record Evidence is Insufficient to Establish a Prima Facie Retaliation Claim*

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. "To establish a prima facie retaliation claim, the plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). A court's analysis under the FRCA is identical "because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).[3]

---

[2] Pursuant to the parties' joint Stipulation of Dismissal with Prejudice of Counts II and IV (DE #50), the Court entered an Order dismissing the gender discrimination claims on October 11, 2012. (DE #51).

[3] Moreover, "decisions construing Title VII guide the analysis" of FRCA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998).

Termination of employment is clearly a materially adverse action. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The Court now addresses whether Plaintiff has offered any evidence suggesting that a reasonable jury could find that he has established the two other elements of a prima facie retaliation claim.

### i. Protected Expression

Statutorily protected expression generally includes both internal complaints to supervisors and activities related to formal filings with the EEOC. *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir 2001). Informal complaints of discrimination to a supervisor also qualify as protected expression. *See Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir. 1993); *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).

To fall under the statute's protection, the plaintiff also must demonstrate that he (1) opposed an employment practice (2) that he subjectively believed to be unlawful under Title VII and (3) that his subjective belief was objectively reasonable. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). The employer's conduct need not have actually been unlawful, "so long as [the plaintiff] demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Blockbuster*, 139 F.3d at 1388 (internal quotation marks omitted). The employee must at least communicate a belief that discrimination is occurring. *Webb v. R & B Holding Co., Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998). "It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Id.* An employee's

belief that an adverse employment action is unlawful is not objectively reasonable if he or she is "aware of legitimate, non-discriminatory reasons" for the action. *Vinson v. Dep't of Corrections, Fla.*, 672 F. Supp. 2d 1247, 1260 (N.D. Fla. 2009).

At the time Plaintiff's employment was terminated, he had not filed an EEOC complaint. *See* (DE #1, p. 5; Dalton Dep., DE #45-1, p. 17). Plaintiff had, however, expressed to a supervisor, Captain Dixon, that he intended to do so. (DE #27-2, p. 2; Dalton Dep., DE #45-1, p. 17). Plaintiff's protest and subsequent discrimination claims— voluntarily dismissed with prejudice from this action—were based on Plaintiff's belief that female employees would not be investigated for the same type of disclosure.

Assuming those facts, Plaintiff would need to prove that his belief was objectively reasonable. Plaintiff's complaint to Captain Dixon followed Captain Dixon instructing Plaintiff that his interview in Key Largo had been cancelled and Plaintiff asking Captain Dixon whether he was under investigation for sharing confidential information without authorization. (Dalton Dep., DE #45-1, pp. 14-15; Dixon Dep., DE #46-1, pp. 18-19). Plaintiff suspected he was; Captain Dixon only communicated that it was a misconduct issue. (Dixon Dep., DE #46-1, p. 19; Dalton Dep., DE #45-1, p. 15).

However, the record facts do not indicate that Plaintiff was given formal or informal notification of any investigation or pending discipline, and the Court agrees with Plaintiff that *Vinson* is distinguishable on the basis that here Plaintiff had to infer potential disciplinary charges. Regardless of whether Plaintiff could have established a

prima facie discrimination claim,[4] the Court finds that, construing the facts in his favor, Plaintiff's expression was protected.

### ii. Causal Connection

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated. Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716-17 (11th Cir. 2002) (citations and quotation marks omitted). But absent additional circumstantial evidence, mere temporal proximity must be "very close." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001). Courts have held that more than three months is too distant to establish a causal connection, *see id.*; *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363-64 (11th Cir. 2007), but that a few weeks or less is clearly sufficient. *See Entrekin v. City of Panama City, Fla.*, 376 Fed. App'x 987, 997 (11th Cir. 2010); *Lawson v. Plantation General Hosp., L.P.*, 704 F. Supp. 2d 1254, 1271 (S.D. Fla. 2010).

A plaintiff cannot establish a causal connection based on temporal proximity if his protected activity occurred after an adverse employment action had been considered or an

---

[4] Though Plaintiff's discrimination claims are no longer at issue, the Court notes that Plaintiff's briefings failed to identify a single similarly situated employee whose favorable treatment could have provided the Court with a basis to find that Plaintiff had been discriminated against. *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076 1082 (11th Cir. 2005). Plaintiff's claim that a female employee, the daughter of a retired Florida Highway Patrol major, was treated more leniently than he was for allegedly violating a different policy would be better characterized as a charge of nepotism than gender discrimination. *See* (Dalton Dep., DE #45-1, pp. 27-32).

investigation had been opened into an employment violation. *See Clark County*, 532 U.S. at 271 ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality."); *Byrd v. Tyson Foods, Inc.*, No. 5:10-CV-161, 2011 WL 3107345, at *3 (M.D. Ga. July 26, 2011) ("Plaintiff cannot establish a causal link because his protected expression on the basis of age occurred *after* he was placed on suspension for sleeping on duty and an investigation had begun."); *Teal v. City of Dahlonega*, No. 2:09-CV-0187, 2011 WL 7006248, at *24 (N.D. Ga. Aug. 24, 2011) (stating that the causal connection was undermined where "Plaintiff had already been placed on administrative leave and was being investigated for misconduct that ultimately formed the basis for her termination when she filed her EEOC charge").

Though this analysis implicates similar facts as the discussion of whether Plaintiff's expression was protected, the outcome is different because the question is not what Plaintiff knew but what actions Defendant had already undertaken at the time Plaintiff complained of discrimination.

Plaintiff communicated his protest of what he believed was gender discrimination to Captain Dixon, who shared that complaint with his supervisor, Deputy Inspector General King. Both were among the five or more members of the Disciplinary Action Review Board. King Dep., DE #27-1, pp. 61-62; Leftheris Dep. DE #48-1, pp. 10-11; DE #44, p. 7). Plaintiff's complaint to Captain Dixon was made October 28, 2010 and

11

Plaintiff received a termination letter on November 3, 2010. (DE #27-2, p. 7). The decision was made either November 1 or November 2. (DE #44, p. 7).

For the purposes of establishing a causal connection, two to three business days qualifies as "very close" temporal proximity. And at least two of the decision-makers were aware of Plaintiff's informal complaint to his supervisor. However, Defendant had already begun an investigation into Plaintiff's policy violation and was contemplating discipline at the time Plaintiff complained to Captain Dixon. The preexisting reason for Defendant's termination of Plaintiff's employment defeats the causal connection between Plaintiff's complaint of gender discrimination and the adverse employment action.

## B. *Plaintiff Did Not Demonstrate That Defendant's Reason Was Pretextual*

Assuming Plaintiff had established a prima facie claim, Defendant would still be entitled to summary judgment because Defendant put forth a legitimate, non-retaliatory basis for Plaintiff's termination and Plaintiff did not demonstrate that Defendant's explanation was mere pretext. *See Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) (discussing how once a plaintiff establishes a prima facie retaliation claim "the burden shifts to the defendant to rebut the presumption of retaliation"); *Mandeville v. City of Coral Gables*, 50 F. Supp. 2d 1320, 1331 (S.D. Fla. 1999) (stating that if the defendant "proffers a legitimate, non-retaliatory reason for its employment decision," the presumption is rebutted and the burden shifts back to the plaintiff to prove that the defendant's reason was pretext.).

A plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that

the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089 (1981). "To survive a motion for summary judgment, the plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Webb*, 992 F. Supp. at 1386 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (internal citation omitted)).

Plaintiff fails to meet this burden. Defendant's proffered reason for firing Plaintiff was that he disclosed confidential information about an ongoing investigation in violation of the Confidentiality Agreement and that termination was a prescribed form of discipline. In alleging pretext, Plaintiff focuses on three facts: (1) the "suspicious timing of Dalton's termination . . . within two business days of telling Captain Dixon that he was going to file an EEOC complaint" (DE #43, p. 11); (2) "Defendant arguably violat[ing] its own personnel policies . . . by not following progressive discipline or conducting any type of formal investigation into the allegations against Plaintiff before he was terminated" (DE #43, p. 11); and (3) members of the disciplinary board not sharing with Personnel Director Elaine Cooper that Plaintiff had expressed an intent to file a discrimination claim. (DE #43, pp. 14-15).

In particular, Plaintiff argues that the issue of whether he should have been investigated before being disciplined "is perhaps the key disputed material fact in this case[.]" (*Id.*) Plaintiff notes that Defendant asserted in its Statement of Facts that Dalton was not entitled to progressive discipline but that Inspector General Julie Leftheris

indicated in her deposition that progressive discipline applies to all employees. *See* (DE # 27, ¶ 18); (Leftheris Dep., DE #48-1, p. 15). However, Plaintiff does not dispute the language of Policy 3.06; he only disputes Defendant's understanding of it. Defendant, in its Reply, emphasizes that the plain language of Policy 3.06 clearly states it applies only to Career Service employees, a class to which Plaintiff did not belong, and that reliance on a contrary statement in deposition is without authority. (DE #52, ¶ 2). The Court agrees.

Plaintiff also notes that an investigation case number was assigned to his leak of information to Lee but no formal investigation was completed. (DE #44, ¶ 33; DE #48-1, p. 15). Plaintiff argues that the explanation for this deviation from policy is obvious: Once the department's deputy inspector general "became aware of [Plaintiff's] stated intent to file an EEOC complaint against her, the formal investigation and the progressive disciplinary processes were apparently abandoned, and instead, a Disciplinary Action Review Board was hastily convened to terminate Plaintiff." (DE #43, p. 12).

However, looking at the record facts in the light most favorable to Plaintiff—particularly, assuming that Defendant deviated from its own employment policies by not investigating Plaintiff before the disciplinary meeting or issuing progressive discipline instead of termination for what was apparently a first-time offense—Plaintiff has neither persuaded the Court that a discriminatory reason was more likely the basis for his dismissal nor cast enough doubt on the Defendant's proffered explanation to strip it of credence. Termination was an approved discipline for Plaintiff's violation of department policy, and Plaintiff has not done more than posit an alternative theory for his firing. That

14

is insufficient to rebut the legitimate, non-retaliatory reason Defendant proffered for Plaintiff's termination. *See Bentley v. Orange County, Fla.*, 445 Fed. App'x 306, 310 (11th Cir. 2011) (holding that even if plaintiff made out a prima facie claim it would not demonstrate that the employer's "legitimate reasons for firing her—fraud and dishonesty and violating the leave policy—were a pretext for the unlawful discrimination").

Moreover, it is irrelevant whether Plaintiff can prove that he should have been disciplined more leniently or even that Defendant used Plaintiff's policy violation as an excuse to fire him. In a retaliation claim, Plaintiff must demonstrate that the adverse employment action was in retaliation for his objection to employment practices unlawful under Title VII and that Defendant's assertion of enforcing a department policy was pretextual. It is not for this Court to decide whether Defendant acted unseemly, but whether Defendant violated Title VII. Plaintiff has failed to do so.

### C. *Defendant's Argument for Dismissal Based on Unclean Hands and Fraud*

Defendant argues, as an alternative basis for summary judgment, that Plaintiff willfully withheld relevant information during discovery about his medical and mental health treatment and that, therefore, it would be appropriate for the Court to sanction Plaintiff by dismissing his claims. However, the Court need not address this alternative argument because finding for Defendant on Plaintiff's failures to establish a prima facie retaliation claim and to demonstrate pretext are dispositive of this case.

## IV. CONCLUSION

After careful consideration and the Court being otherwise fully advised, it is

**ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's Motion for Summary

Judgment (**DE #27**) be, and is hereby, **GRANTED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal

Justice Building and United States Courthouse, Miami, Florida, this 26th day of October,

2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc:

*Counsel for Plaintiff*

**Christopher Charles Sharp**
Sharp Law Firm, P.A.
4462 North University Drive
Lauderhill, FL 33351
954-747-9777
Fax: 919-9041
Email: csharplaw@aol.com

*Counsel for Defendant*

**Glen Allen Bassett, II**
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
850-414-3300
Fax: 850-488-4872
Email: glen.bassett@myfloridalegal.com

**Mimi Vivien Turin**
Office of the Attorney General
110 SE 6th Street
10th Floor
Ft. Lauderdale, FL 33301
954-712-4600
Fax: 954-527-3702
Email: mimi.turin@myfloridalegal.com